UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FELICIANO T., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 23 CV 2777 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Feliciano T. appeals from the Commissioner of Social Security's decision denying his application for benefits. For the following reasons, plaintiff's motion to reverse the Commissioner's decision [11] is granted, defendant's motion for summary judgment [18] is denied, and the case is remanded for further administrative proceedings.[1]

**Background**

In October 2018, plaintiff applied for a period of disability and disability insurance benefits with an alleged onset date of September 27, 2018. [8-1] 15. The claim was denied initially, on reconsideration, and after a hearing before an administrative law judge. [*Id.*] 12-29, 64-73, 76-91. After the Appeals Council denied review, plaintiff appealed to this Court. In November 2021, the Court granted defendant's agreed motion for reversal and remanded the case for further proceedings. [8-2] 1497. On remand, the ALJ held a hearing and again denied plaintiff's application for benefits. [*Id.*] 1382-99. The Appeals Council denied review in March 2023 [*id.*] 1372-78, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff has again appealed to this Court, and the Court has subject-matter jurisdiction under 42 U.S.C. § 405(g).[2]

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [8-1, 8-2], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. [6].

The ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step evaluation process. At step one, the ALJ found that plaintiff had engaged in substantial gainful activity from his alleged onset date through September 27, 2019, but had not engaged in substantial gainful activity after September 28, 2019. [8-2] 1385. At step two, the ALJ determined that plaintiff had the following severe impairments: depressive disorder, anxiety disorder, post-traumatic stress disorder, and obstructive sleep apnea. [*Id.*] 1385-87. At step three, the ALJ concluded that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 1387-89. Before turning to step four, the ALJ ruled that plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, except that he (1) must avoid even moderate use of moving or hazardous machinery and commercial vehicles and even moderate exposure to unprotected heights, (2) can remember simple instructions, and (3) can perform tasks where he can maintain occasional interaction with the public, co-workers, and supervisors. [*Id.*] 1389-97. At step four, the ALJ held that plaintiff could not perform his past relevant work as a bus/truck mechanic. [*Id.*] 1397. At step five, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform: order puller (300,000 jobs), hand packager (200,000 jobs), and kitchen helper (800,000 jobs). Accordingly, the ALJ determined that plaintiff was not disabled.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

Plaintiff argues that the denial of benefits should be reversed and the case remanded because (1) the ALJ erred in rejecting the mental functional limitations identified by a state agency psychologist, (2) the RFC determination should have included a limitation that plaintiff needed to nap during the workday, (3) the ALJ's subjective symptom determination was patently erroneous, and (4) there is an apparent conflict between the ALJ's step five ruling and the Dictionary of Occupational Titles (DOT). *See* [11] 3-16. The Court agrees that the ALJ's handling

2

of the state agency reviewer's opinion and his step five ruling were erroneous and that a remand is warranted to correct these errors.[3]

### A.  Step Five Ruling

Plaintiff argues that the ALJ erred at step five because one component of the RFC determination precludes him performing the three jobs identified by the ALJ. [11] 15-16. In support, plaintiff notes that the RFC determination requires that "[h]e must avoid even moderate use of moving or hazardous machinery and commercial vehicles[.]" [8-2] 1389. However, plaintiff contends that each of the jobs at issue could require him to drive a commercial vehicle or use moving or hazardous machinery. Because the ALJ failed to resolve this apparent conflict between the RFC and the description of these jobs in the DOT, plaintiff contends that the denial of benefits should be reversed. [11] 15-16; [25] 12-13.

"At step five, the Commissioner has the burden of establishing that the claimant can perform other work that exists in significant numbers in the national economy." *Sara H. v. O'Malley*, No. 22-CV-6386, 2024 WL 6891020, at *2 (N.D. Ill. July 2, 2024) (internal quotation marks omitted). The ALJ may rely on the testimony of a vocational expert (VE) to meet this burden "if that testimony is reliable," but "a step five finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Id.*

The ALJ has "an affirmative responsibility to ask about any possible conflict between the VE's testimony and information provided in the DOT." *Dustin S. v. O'Malley*, No. 21 CV 5693, 2024 WL 4836233, at *3 (N.D. Ill. Nov. 20, 2024) (internal quotation marks omitted). "This affirmative duty extends beyond merely asking whether the VE's testimony is consistent with the DOT and requires the ALJ to elicit a reasonable explanation for the conflict before relying on the VE's testimony to support a determination or decision about whether the claimant is disabled." *Id.* (internal quotation marks, brackets, and ellipses omitted). If a claimant who is represented by counsel at the hearing fails to object to the VE's testimony, that failure ordinarily results in a forfeiture of the objection. *See Fetting v. Kijakazi*, 62 F.4th 332, 338 (7th Cir. 2023). But there is an exception to this forfeiture rule: "If there is an apparent conflict between the vocational expert's testimony and the [DOT], the ALJ has an independent duty to ask the vocational expert about the conflict, so a claimant may raise that issue on appeal regardless of whether she objected during the hearing." *Plemon v. Bisignano*, No. 25-CV-309-JDP, 2026 WL 92934, at *12 (W.D. Wis. Jan. 13, 2026); *see also Sarah H.*, 2024 WL 6891020, at *2 (same).

Because neither plaintiff nor his counsel objected to the VE's testimony at the hearing, *see* [8-2] 1452-57, plaintiff "must demonstrate that the conflicts were obvious

---

[3] Because these issues are dispositive, the Court need not address plaintiff's other grounds for remand.

3

enough that the ALJ should have picked up on them without any assistance." *Surprise v. Saul*, 968 F.3d 658, 662 (7th Cir. 2020). The Court concludes that plaintiff has done so, as there are readily apparent conflicts between the RFC determination and the DOT's description of each of the three jobs that the ALJ found that plaintiff could perform. *See Sarah H.*, 2024 WL 6891020, at *3 ("The Court believes that it may compare the job descriptions posited by the VE to the Plaintiff's RFC to determine whether there are apparent conflicts with the DOT; this is the type of analysis regularly performed by Courts in cases like this.").

First, the position of order puller identified by the VE and the ALJ may require a worker to "drive vehicle to transport stored items from warehouse to plant or to pick up items from several locations for shipment." DOT 922.687-058, 1991 WL 688132 (1991). This job duty conflicts with the restriction in the RFC determination that plaintiff must avoid moderate use of commercial vehicles. Second, the position of hand packager identified by the VE and the ALJ may require the employee to "feed[ ] machine that covers plastic sheets with paper to protect sheets during final processing and shipping" and "feed[ ] sheets between rollers of masking machine." DOT 920.586-010, 1991 WL 687913 (1991). This job duty appears to conflict with the provision in the RFC determination that plaintiff must avoid even moderate use of moving and/or hazardous equipment.[4] Third, the position of kitchen helper identified by the VE and the ALJ may entail "[s]ort[ing] bottles, and break[ing] disposable ones in bottle-crushing machine" and "[w]ash[ing] and peel[ing] vegetables, using knife or peeling machine." *DOT* 318.687-010, 1991 WL 672755 (1991). Again, these duties appear to conflict with the ALJ's conclusion that plaintiff must avoid even moderate exposure to moving or hazardous equipment. Because the ALJ did not ask the VE to explain how it was possible for a claimant who could not make even moderate use of commercial vehicles, moving machinery, and hazardous machinery to perform these three jobs, the Court concludes that the ALJ's step five ruling lacks substantial evidentiary support.

The Commissioner's arguments to the contrary lack merit. The Commissioner first emphasizes that plaintiff failed to identify an inconsistency between the VE's testimony and the DOT at the hearing. [19] 13. The Commissioner is correct on that score, but as discussed above, plaintiff's failure to object at the hearing does not prevent him from raising this issue now. *See Surprise*, 968 F.3d at 662; *Plemon*, 2026

---

[4] The Court notes that, although the VE stated that the DOT code for the hand packager position was 920.586-010, that code corresponds to a separate position: masking-machine feeder. *See* 1991 WL 687913 (1991). The VE did not clarify this apparent discrepancy in his testimony, and both the ALJ's decision and the Commissioner's brief refer to the hand packager position with the 920.586-010 code. *See* [8-2] 1398; [19] 13. It is unclear to the Court whether the VE meant that plaintiff could perform the hand packager position but identified the wrong DOT code or whether the VE meant that plaintiff could perform the masking-machine feeder job but referred to the wrong job title in his testimony. Because the VE, the ALJ, and defendant have overlooked this issue, the Court will not pursue it any further.

WL 92934, at *12. The Commissioner next contends that there is no apparent conflict because "the ALJ did not find plaintiff incapable of working around machines or commercial driving," and that the DOT is silent on whether "the jobs require 'moderate' or higher exposure to hazardous machines or driving[.]" [19] 14. The Commissioner relies on *Zblewski v. Astrue*, 302 F. App'x 488, 494 (7th Cir. 2008), for the proposition that "[w]hen the DOT does not address a particular subject, it is not apparent that the VE testimony conflicts with the DOT." [*Id.*] (internal quotation marks and brackets omitted). The DOT may be silent on whether the three jobs involve "moderate use" of commercial vehicles, moving machinery, and hazardous machinery, but the DOT directly addresses what the job duties of an order puller, hand packager, and kitchen helper are. As explained above, each of those positions may entail exposure to hazardous or moving machinery or require the employee to drive a commercial vehicle. Thus, given the DOT's description of those jobs and the ALJ's determination that plaintiff could not tolerate even moderate use of commercial vehicles, hazardous machinery, and moving machinery, it was incumbent upon the ALJ to clarify with the VE whether plaintiff could in fact perform those jobs.[5] The ALJ's failure to do so requires a remand.

### B. State Agency Psychologist's Opinion

Dr. Joseph Mehr, the state agency psychologist who reviewed plaintiff's claim at the reconsideration stage, opined that plaintiff had "the capacity to meet the basic mental demands of competitive, remunerative, simple one to two step tasks." [8-1] 88. Dr. Mehr also opined that plaintiff's ability to interact appropriately with the public was moderately limited. [*Id.*]. In the narrative section of his report, Mehr translated that limitation as follows: "He has limited social tolerance but he can relate appropriately in socially undemanding settings that have low stress demands and require only brief superficial interactions and with reduced interpersonal contact away from the general public in a setting where social contact is incidental to the work performed." [*Id.*] 89. Finally, Dr. Mehr opined that plaintiff could deal with changes in a routine work setting if they were introduced gradually. [*Id.*].

---

[5] *Zblewski* confirms rather than undermines the Court's conclusion. The ALJ in that case found that the claimant could perform light and sedentary work if he had the opportunity to sit or stand. 302 F. App'x at 492. The VE then "offered his opinion on jobs available in the national economy" for a claimant with a sit/stand limitation and specifically identified "2000 assembly jobs [that] allowed a sit/stand at-will option." *Id.* The Seventh Circuit held that the VE's testimony did not apparently conflict with the DOT because "the DOT does not address the subject of sit/stand options[.]" *Id.* While the VE in *Zblewski* testified to a specific number of jobs that a claimant needing a sit/stand option could perform, the VE here did not similarly testify to the number of order puller, hand packager, and kitchen helper jobs that could be performed without the employee being exposed to moderate uses of commercial vehicles, dangerous machinery, or moving machinery. Rather, he identified three positions that featured job duties that conflicted with the RFC determination and did not offer additional testimony that winnowed out jobs in those categories that plaintiff could not perform.

5

The ALJ found Dr. Mehr's opinion "somewhat persuasive." [8-2] 1395. Regarding the social limitation, the ALJ conceded that plaintiff had "problems interacting with others based on his reported anxiety and panic attacks and anger" but concluded that Mehr's opinion was "vague and not written in vocationally relevant terms." [*Id*.]. The ALJ instead concluded that plaintiff could tolerate occasional interactions with the public, coworkers, and supervisors. [*Id*.] 1389. As for the limitation regarding gradually introduced changes in the workplace, the ALJ ruled that this limitation was "unsupported because the claimant appeared on many exams with a normal mood, affect, appearance, and orientation" and because plaintiff "reported being able to handle a wide variety of activities, including driving, doing house repairs, handling personal care, shopping, spending time with others, and using a computer." [*Id*.]. The ALJ likewise rejected the 1-2 step task limitation, finding that plaintiff "reported being able to drive, which presumably requires more than two steps to successfully complete the [task], and the claimant was noted as being able to follow instructions." [*Id*.]. Finally, the ALJ noted that Dr. Mehr's opinion was "provided while the claimant was working at substantial gainful activity levels, which shows that he was likely able to handle the multi-step tasks of a bus mechanic and changes at his work setting with the Chicago Transit Authority." [*Id*.].

The Court concludes that substantial evidence does not support the ALJ's rejection of the social-interaction limitation or the limitation regarding workplace changes.

An ALJ "will not defer or give any specific weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from a [claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ will explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings[.]" 20 C.F.R. § 404.1520c(b). In deciding how persuasive a given opinion or administrative finding is, the ALJ considers "supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict" the opinion or finding. *Victor F. v. Kijakazi*, No. 22 C 1451, 2023 WL 2429357, at *3 (N.D. Ill. Mar. 9, 2023). "Supportability and consistency are the two most important factors." *Id*. "An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors." *Id*.

Here, the ALJ did not rely on substantial evidence to support her rejection of Dr. Mehr's opinion that plaintiff could tolerate only brief, superficial interactions in the workplace. Setting aside the ALJ's (dubious) characterization of Mehr's opinion as "vague," the Court cannot accept the ALJ's erroneous statement that the opinion is not "vocationally relevant." To the contrary, the opinion directly addressed the length of the social interactions that plaintiff could tolerate in the workplace ("brief"), the intensity of those interactions ("superficial"), where those interactions could occur ("in socially undemanding settings" where "social contact was incidental to the work

6

performed") and with whom he could interact ("away from the general public"). [8-1] 89. All these factors relate to plaintiff's ability to interact with others appropriately in the workplace and thus are vocationally relevant. If that were not apparent from Dr. Mehr's opinion itself, it certainly is apparent from the fact that the ALJ's RFC determination–which reflects the ALJ's view that plaintiff can tolerate occasional interactions with three different categories of people–addresses some of the very factors that Mehr addressed.[6]

The ALJ likewise failed to provide a substantial evidentiary basis to support his rejection of Dr. Mehr's opinion that plaintiff could tolerate workplace changes that were gradually introduced. The ALJ relied primarily on plaintiff's unremarkable examination findings, but "[a]ny inference from the fact that [plaintiff] is sometimes able to appear with normal behavior, normal mood, appropriate demeanor during [his] medical appointments is limited, given that mental health patients are often much more comfortable with familiar treatment providers than they would be in a work setting." *Mildred B. v. Bisignano*, No. 23 CV 4955, 2025 WL 3620992, at *4 (N.D. Ill. Dec. 15, 2025) (internal quotation marks omitted). The ALJ also pointed to the fact that plaintiff could handle "a wide variety" of activities of daily living (ADLs), but this observation ignores the "critical differences between keeping up with activities of daily living and holding down a full-time job." *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020). "[A]n ALJ must be careful not to go too far and equate the ability to engage in some activities with an ability to work full-time, without a recognition that full-time work does not allow for the flexibility to work around

---

[6] The Commissioner appears to argue that any error in rejecting this limitation was harmless because the three jobs identified by the ALJ "involve the lowest complexity of social contact contemplated by the DOT." [19] 7 (citing *Tiffany S. v. Comm'r of Soc. Sec.*, Case No. 22 C 2116, 2023 WL 5530596, at *5 (N.D. Ill. Aug. 28, 2023)). In support, the Commissioner notes that these jobs have "an '8' at the fifth digit of the occupational code," which "signifies that the job involves the lowest level of social interaction." [*Id.*]. The Court rejects this argument for two reasons. First, it an impermissible post-hoc rationalization because the ALJ never considered whether plaintiff could satisfy the social-interaction requirements of these jobs if he had adopted Dr. Mehr's social-interaction limitation. *See Hejna v. Bisignano*, No. 19-cv-5998, 2025 WL 2495864, at *2 (N.D. Ill. Aug. 29, 2025) ("When an ALJ's justifications for a decision are missing, that omission may not be cured by post-hoc rationale because a reviewing court must look to what the ALJ did, not what he might have done.") (internal quotation marks omitted). Second, even if the Court could consider this argument, the Court is not convinced that the ALJ would have found plaintiff disabled if he had adopted Dr. Mehr's social-interaction limitation. *See Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022). As the court in *Tiffany S.* explained, the "8" at the end of a DOT job code means that the requirements of "Taking Instructions-Helping" was "Not Significant." 2023 WL 5530596, at *5. The phrase "Taking Instructions-Helping," in turn, means "[a]ttending to the work assignment instructions or orders of *supervisor*." *Id.* (emphasis added). But Dr. Mehr, the testifying expert Dr. Efobi, and the ALJ all found that plaintiff was limited in his ability to interact with members of the public in addition to supervisors. *See* [8-1] 88-89; [8-2] 1389, 1396-97. Thus, the Court cannot be confident that a remand to address this issue would result in another determination that plaintiff was not disabled.

7

periods of incapacitation." *Edie M.S. v. Bisignano*, No. 22 C 6777, 2025 WL 1399141, at *4 (N.D. Ill. May 14, 2025) (internal quotation marks omitted). Any such recognition is missing from the ALJ's analysis here, which assumes that, because plaintiff could apparently transition between different ADLs on his own schedule in his private life, he could tolerate changes in a work setting no matter the pace at which they were introduced. Last, the ALJ assumed that plaintiff "was likely able to handle . . . changes at his work setting with the Chicago Transit Authority," but nothing in the ALJ's decision sheds light on the kinds of changes (if any) that plaintiff experienced in his former work setting, nor does the evidence show the pace at which such changes were introduced. "Speculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999). For all the ALJ's decision shows, plaintiff may have encountered no changes in the work setting or only changes that were gradually introduced.

Finally, the Court concludes that the ALJ's reliance on the opinion of a testifying expert, psychiatrist Chukewuemeka Efobi, does not provide substantial evidence for the mental and social limitations in the RFC determination. Dr. Efobi opined that plaintiff could occasionally interact with others and that he was moderately limited in his ability to adapt or manage oneself. [8-2] 1396. The ALJ concluded that the former limitation was consistent with the record but rejected the latter limitation, which the ALJ found "inconsistent with Dr. Efobi not giving the claimant any functional limitations when asked about [his] work abilities that would correlate to that paragraph B criteria rating." [*Id.*]. The ALJ also found that any adaptive limitation was inconsistent with the evidence that plaintiff had "repeated appointments where he denied having any psychiatric symptoms" and "exams without any abnormalities in appearance, mood, affect, and orientation." [*Id.*] 1396-97.

In the Court's view, the ALJ failed to build a logical bridge from Dr. Efobi's opinion and the evidence supporting that opinion to the ALJ's conclusion that plaintiff could occasionally interact with supervisors, coworkers, and members of the public. Most importantly, while Dr. Efobi acknowledged that plaintiff's sleep apnea "appear[ed] to be the most prominent issue" and a key driver of plaintiff's stress, anxiety, panic, and hallucinations, *see* [8-2] 1445, 1450, Dr. Efobi did not consider sleep apnea in determining the extent of plaintiff's functional limitations, *see* [*id.*] 1447 ("Q: So, the functional limitations that you provided today, are those considering sleep apnea? A: No."); [*id.*] 1448 ("Q: So, are you – and if you're not able to answer this, just let me know – would his functional ability be less that what you testified to if we considered sleep apnea as an impacting piece? A: I suspect it should be more severe but that would be for the medical person to determine."); [*id.*] 1450 ("Q: Do you feel – would you feel comfortable advising a person in this situation to go to work under the limitations you've provided if their sleep apnea isn't being considered? A: So, what you're trying to do is make me give an opinion on that medical issue which

I'm unable to do."). This testimony reflects that Dr. Efobi purported to rate the severity of plaintiff's mental and social limitations without considering one of plaintiff's severe impairments–sleep apnea–that Efobi agreed would exacerbate those limitations. Because the ALJ did not address this component of Dr. Efobi's testimony, let alone minimally articulate why he found the opinion persuasive despite the significant caveat Dr. Efobi attached to it, the Court concludes that substantial evidence does not support the ALJ's reliance on Dr. Efobi's opinion as grounds for finding that plaintiff could tolerate occasional interactions with supervisors, coworkers, and the general public.[7]

## Conclusion

Plaintiff's motion to reverse [11] is granted and defendant's motion for summary judgment [18] is denied. The decision of the Social Security Administration is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: January 26, 2026**

---

[7] The Commissioner argues that plaintiff forfeited any argument that the ALJ erred by relying on Dr. Efobi's opinion by not raising such an argument in his opening brief, *see* [19] 4, but the Court disagrees. Plaintiff's challenge to the ALJ's handling of Dr. Mehr's opinion provides a sufficient basis to reverse and the remand the denial of benefits, and plaintiff was not required to also argue that the ALJ's reliance on Dr. Efobi's opinion did not justify the denial of benefits. Because the Commissioner argued in his response brief that Dr. Efobi's opinion justified the denial of benefits, it was proper for plaintiff to address that argument in his reply brief, *see* [25] 5, and for the Court to review Dr. Efobi's testimony to determine whether the ALJ properly relied on his opinion. *See Beck v. Univ. of Wisconsin*, 75 F.3d 1130, 1134 n.1 (7th Cir. 1996) (reply brief is proper mechanism for "respond[ing] to matters placed in issue by the opposition brief").